SHEPHERD FINKELMAN MILLER
  &amp; SHAH LLP
JAMES C. SHAH
475 White Horse Pike
Collingswood, NJ 08107
Telephone: 856/858-1770
856/858-7012 (fax)
jshah@sfmslaw.com

POMERANTZ GROSSMAN HUFFORD
    DAHLSTROM & GROSS LLP
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: 954/315-3454
954/315-3455 (fax)
jagoldstein@pomlaw.com

MILBERG LLP
JANINE L. POLLACK
JOSHUA E. KELLER
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: 212/594-5300
212/868-1229 (fax)
jpollack@milberg.com
jkeller@milberg.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BARBARA GLABERSON, on Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>        Plaintiffs,<br><br>    v.<br><br>FITFLOP USA, LLC, FITFLOP LIMITED, BRAND SLAM LTD., and MARCIA DIANE KILGORE<br><br>        Defendants. | Case No.:<br><br><br><br>**CLASS ACTION COMPLAINT FOR (1) VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT, N.J. STAT. ANN. §56:8-1 ET SEQ.; AND (2) BREACH OF EXPRESS WARRANTY**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Barbara Glaberson, on behalf of herself and all others similarly situated, brings this action against defendants FitFlop USA, LLC, FitFlop Limited, Brand Slam Ltd., and Marcia Diane Kilgore ("FitFlop" or "Defendants"), and states:

## NATURE OF ACTION

1.     Through an extensive, comprehensive, and uniform nationwide marketing campaign, Defendants claim that their expensive FitFlop Footwear (ranging from approximately $50-$240 per pair) with their patent-pending "Microwobbleboard™ Technology" will provide to anyone who wears it a variety of health benefits ordinary footwear cannot provide.  Defendants promise that their shoes improve posture, increase muscle activation and toning, and reduce joint strain.[1]  For example, the product packaging on FitFlop sandals states: "FitFlop Footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them." Defendants represent that independent studies show that FitFlop Footwear is proven to provide these benefits.  However, Defendants' health benefit claims are false and deceptive, and FitFlop Footwear is not proven to provide any of these benefits.

2.     Defendants' false and deceptive marketing campaign begins with the products' name – FitFlop – and deceptive trademarked taglines: "GET A WORKOUT WHILE YOU WALK™" and "RELIEF YOU CAN WEAR ON YOUR FEET™."  The product name and trademarked taglines falsely imply that FitFlops deliver the specific claimed benefits. Defendants' uniform and extensive advertising campaign builds on this deception.

3.     There are no well-designed scientific studies that support Defendants' health benefits claim.  As a recent study sponsored by the independent American Council on Exercise concluded, "wearing so-called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe.  Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone

---

[1]     For purposes of this Complaint, "FitFlop Footwear" or "FitFlop(s)" refers collectively to all past and present men's and women's style sandals, boots, clogs, slippers, and shoes marketed with Defendants' Microwobbleboard™ Technology.

more than wearing a regular running shoe." *See* John P. Porcari, PhD., *et al.*, *The Physiologic and Electromyographic Responses to Walking in Regular Athletic Shoes Versus "Fitness Shoes"* at 12, *available at* http://www.acefitness.org/getfit/ studies/toningshoes-findings.pdf ("Porcari Report"). In fact, the only two published studies involving FitFlops, which include one that was funded by FitFlop, demonstrate that the marketing claims are false and deceptive. *See* Burgess, K.E., Swinton, P.A., *Do Fitflops$^{TM}$ increase lower limb muscle activity?*, Clin.Biomech. (2012), http://dx.doi.org/10.1016/j.clinbiomech.2012.08.011; Price, C., Smith L. et al., *The effect of unstable sandals on instability in gait in healthy female subjects*, Gait & Posture (2013), http://www.ncbi.nlm.nih.gov/pubmed/23357759. The studies Defendants claim support their advertised promises do not. Even the researchers who conducted the studies concede the studies they perform do not support the advertised promises.

4.      Despite the false and deceptive nature of Defendants' claims and assertions, since 2007 Defendants have employed numerous methods to convey their uniform, deceptive messages to consumers. Defendants conveyed and continue to convey their deceptive claims about FitFlop Footwear through a variety of media, including point of sale displays, magazines, newspapers, the Internet, social media websites, outdoor billboards, bus wraparounds, and on the products' packaging, hangers, and hang tags. The only reason a consumer would purchase the premium-priced FitFlop Footwear (as opposed to less expensive, ordinary flip flops/sandals/other footwear) is to obtain the advertised health benefits, which FitFlop Footwear does not actually provide.

5.      As a result of Defendants' false and deceptive claims, consumers – including Plaintiff and the other members of the proposed Class – have purchased a product that does not perform as advertised. Moreover, Defendants have been able to charge a significant price premium for FitFlop Footwear over other traditional, comparable footwear products that do not make false and deceptive health benefits claims.

6.      Marcia Kilgore is the principal architect of this consumer fraud, and the other Defendants are the willing participants. Ms. Kilgore founded FitFlop in 2007, a decade after

starting Bliss Spa and selling it for more than $30 million.  Ms. Kilgore exercised strict control over the marketing and advertising for FitFlop Footwear, including creating the primary content for FitFlop Footwear advertising, and personally creating, editing and approving any FitFlop Footwear advertisement.

Plaintiff brings this lawsuit on behalf of herself and other similarly situated consumers who purchased FitFlop Footwear, in order to halt the dissemination of this false and deceptive advertising message, correct the false and misleading perception Defendants have created in the minds of consumers, and obtain redress for those who have purchased FitFlop Footwear. Plaintiff alleges violations of New Jersey's Consumer Fraud Act and breach of express warranty created by Defendants' advertising, including their labeling.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the class of plaintiffs, whose number exceeds 100, are citizens of states different from FitFlop.  Further, greater than two-thirds of the class members reside in states other than the state in which FitFlop is a citizen.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

(a)      are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this district;

(b)      do substantial business in this district; and

(c)      are subject to personal jurisdiction in this district.

9.      This Court has personal jurisdiction over defendant Marcia Kilgore because Ms. Kilgore has purposefully availed herself of the benefits of conducting activities in the State of New Jersey by directing activities in the State of New Jersey and by causing effects in New Jersey by acts done elsewhere.  Ms. Kilgore's activities were conducted with the intent to cause

effects in New Jersey and could reasonably have been expected to do so.  For example, for the purpose of advertising FitFlop Footwear for sale in the United States, Ms. Kilgore appeared in New York on at least one television station that is broadcast to parts of New Jersey, where she stated that FitFlop Footwear "was a sandal that we created to help work your muscles more every time that you walked."[2]  Ms. Kilgore's activities in and directed at New Jersey include doing business in New Jersey, her formation of the FitFlop USA defendant whose sole function is the sale of FitFlop Footwear in the United States, including New Jersey.  Ms. Kilgore founded and owns the FitFlop defendants, directs and controls the FitFlop defendants, and in particular designs and approves the marketing at issue in this case, oversees the sale of the FitFlop Footwear at issue in this case and has ultimate authority over the marketing materials used to sell the FitFlop Footwear at issue in this case.  The controversy arises out of or is related to Ms. Kilgore's contacts with New Jersey and the exercise of jurisdiction by this Court is fair and reasonable.

10.     This Court has personal jurisdiction over defendant FitFlop Limited because this defendant has purposefully availed itself of the benefits of conducting activities in the State of New Jersey by directing activities in the State of New Jersey and by causing effects in New Jersey by acts done elsewhere.  FitFlop Limited's activities were conducted with the intent to cause effects in New Jersey and could reasonably have been expected to do so.  The activities directed in and at New Jersey include that employees of FitFlop Limited marketed and sold the FitFlop Footwear within New Jersey.  These marketing activities took place both directly in New Jersey and also in London with effects in New Jersey.  Employees of FitFlop Limited also conducted the activities associated with the design, research and sale of the FitFlop Footwear in New Jersey.  These activities took place directly in New Jersey with effects in New Jersey.  The controversy arises out of or is related to FitFlop Limited's contacts with New Jersey and the exercise of jurisdiction by this Court is fair and reasonable.

---

[2]        http://www.youtube.com/watch?v=FQRn80Vpyak (last visited March 13, 2013).

This Court has personal jurisdiction over defendant Brand Slam Ltd. because this defendant has purposefully availed itself of the benefits of conducting activities in the State of New Jersey by directing activities in the State of New Jersey and by causing effects in New Jersey by acts done elsewhere.  Brand Slam Ltd.'s activities were conducted with the intent to cause effects in New Jersey and could reasonably have been expected to do so.  The activities directed in and at New Jersey include that employees of Brand Slam Ltd. conducted the marketing of the FitFlop Footwear at issue in this case.  These marketing activities took place directly in New Jersey with effects in New Jersey.  Employees of Brand Slam Ltd. also conducted the activities associated with the design, research and sale of the FitFlop Footwear in New Jersey.  These activities took place both directly in New Jersey with effects in New Jersey. The controversy arises out of or is related to Brand Slam Ltd.'s contacts with New Jersey and the exercise of jurisdiction by this Court is fair and reasonable.

### PARTIES

11.   Plaintiff Barbara Glaberson is a resident of the state of New Jersey.  During the time period relevant to this action, Plaintiff was exposed to Defendants' deceptive labeling and advertising claims, including Defendants' claims on their hangers and hangtags for the FitFlop Footwear, and purchased the premium-priced FitFlop Footwear in reliance on the truth of these claims and suffered injury in fact and lost money as a result of Defendants' unlawful conduct by purchasing the falsely advertised FitFlop Footwear.  In reliance on Defendants' claims, in or about Spring, 2010, at Nordstrom Department Store in Cherry Hill, New Jersey, Plaintiff purchased a pair of bronze FitFlop sandals for approximately $60.  If she had known the truth about Defendants' claims, she would not have purchased the FitFlop sandals.  Notwithstanding the above, Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages.

12.   Defendant FitFlop USA LLC ("FitFlop USA") is a Delaware limited liability company incorporated in New York.  FitFlop USA was incorporated in August 2010.  Its standard process address is John Zampino P.C., 405 Lexington Avenue, Suite 5002, New York,

New York 10174.  FitFlop USA's parent is FitFlop Limited.  FitFlop USA is a co-participant in the unfair business practices at issue.  FitFlop USA distributes, markets and sells its FitFlop Footwear to consumers in the United States through its online store at www.fitflop.com, as well as through authorized retailers such as Victoria's Secret, Amazon.com, Zappos.com, Nordstrom's, Macy's.com, Footsmart, and Bliss.  Defendants provided some or all of the FitFlop Footwear advertising to their authorized retailers, and Defendants do not permit their authorized retailers to deviate whatsoever about how they must advertise and market Defendants' FitFlop Footwear, to be consistent with FitFlop's uniform claims that their footwear strengthens and tones leg, thigh and butt muscles while you walk in it.  According to FitFlop USA's website, Katie Neiman, the International PR Manager for FitFlop Limited, is also the Account Manager for FitFlop USA.  Tom Terry, FitFlop USA's President, testified that as the "steward of the brand in the United States," his responsibilities include "following the guidelines prepared and presented from headquarters in London, England to execute brand strategy."

13.     Defendant FitFlop Limited is a United Kingdom corporation, headquartered at The Point, 210 New Kings Road, London SW6 4NZ.  FitFlop Limited is FitFlop USA's parent corporation.  FitFlop Limited is a co-participant in the unfair business practices at issue.  FitFlop Limited, FitFlop USA, and Brand Slam Ltd., which are controlled and operated by Ms. Kilgore, operate as co-conspirators and as a single business enterprise, with unity of interests and ownership, to design, market and sell FitFlop Footwear in the United States and the State of New Jersey.  The only FitFlop corporate defendant in existence throughout the relevant period was FitFlop Limited located in London, United Kingdom.  In fact, until 2010, the only FitFlop corporate entity in existence and the sole FitFlop corporate entity responsible for the research, design, marketing and sale of FitFlop Footwear in the United States and the State of New Jersey was FitFlop Limited.  Despite the creation of FitFlop USA in 2010, FitFlop Limited remains the FitFlop corporate entity that is responsible for the research, design, quality control, brand standards, and marketing of FitFlop Footwear in the United States, including in the State of New Jersey.  FitFlop Limited owns a U.S. design patent for FitFlop Footwear.  FitFlop Limited's CEO

reports to the directors of Brand Slam.  FitFlop Limited is also the parent corporation of Name Drop SARL and FitFlop Limited, Luxembourg Branch, which are the entities that own the intellectual property, e.g., "FitFlop" and "Microwobbleboard" trademarks associated with FitFlop Footwear.  FitFlop Limited's CEO since January 2011, Suzie de Rohan Willner, is also FitFlop's CEO worldwide.

14.     Defendant Marcia Diane Kilgore is the Founder, Creative Director and former CEO of FitFlop Limited, and is a co-participant in the unfair business practices at issue.  Ms. Kilgore maintains a residence in Brooklyn, New York.  Ms. Kilgore conducts business in the United States for FitFlop, including through promoting and marketing the FitFlop Footwear.  Ms. Kilgore is a co-participant in each of the acts alleged.  FitFlop USA is under the direct control of FitFlop Limited and ultimately Ms. Kilgore herself.  For the FitFlop Footwear sold in the United States, Ms. Kilgore was personally involved in the day to day operations and made ultimate decisions concerning marketing the FitFlop Footwear.  For example, Ms. Kilgore testified that "I do oversee everything."  Ms. Kilgore also testified at deposition in response to a question whether she approves marketing on FitFlop Footwear hangers, "It was my job to approve these things, yes."  Tellingly, though her employees do the actual postings, Ms. Kilgore even claims responsibility for the content of FitFlop's Twitter postings: "I travel a lot and don't have all my passwords with me at all times, so often I'll send the info to someone who will put it online for me…I tell them what to write."[3]  When asked who knows the most about the content of advertising, Ms. Kilgore responded "That is me.  Q: That is totally you?  A:  Yes."  Ms. Kilgore is also listed as the inventor and applicant on a number of patent applications for FitFlop Footwear.[4]  According to the FitFlop's current job posting for a Global Retail Marketing

---

[3]     *See* http://www.brandchannel.com/features_effect.asp?pf_id=512 (last visited March 11, 2013).
[4]     *See* http://patentscope.wipo.int/search/en/WO2008132478 (abstract for patent application no. PCT/GB2008/001490 states in part, "[a]n item of footwear for increasing leg-muscle and/or lower-abdominal-/back muscle tone") (last visited March 11, 2013); http://www.ipo.gov.uk/p-find-publication-getPDF.pdf?PatentNo=GB2449064&DocType=A&JournalNumber=6234 (abstract title for patent application no. 0708244.9 is "Item of footwear for rehabilitation of leg-muscle tone" and abstract states in part "[a]n item of footwear is provided for increasing leg-muscle and/or lower-abdominal-/back-muscle tone") (last visited March 11, 2013).

Manager, this position is "responsible for the global in store presentation and trade marketing initiatives for the brand" and "working closely with our Founder/Creative Director" – Marcia Kilgore.[5]

15.     Defendant Brand Slam Ltd. ("Brand Slam") is a United Kingdom corporation, headquartered at The Point, 210 New Kings Road, London SW6 4NZ.  Brand Slam was incorporated in November 2007.  On information and belief, WoodBourne Nominees Ltd. ("WoodBourne"), which has the same registered address as FitFlop Limited and Brand Slam, is Brand Slam's sole shareholder, WoodBourne is a subsidiary of Prospect Nominees Limited, and Brand Slam was the sole shareholder of Brandhandling International Limited (a dissolved, FitFlop-related company started by Ms. Kilgore).  Brand Slam is a co-participant in the unfair business practices at issue.  Brand Slam, which was founded and owned by Ms. Kilgore, describes itself as a brand management company.  Brand Slam has two brands and subsidiaries – Soap & Glory (a cosmetics company owned and operated by Ms. Kilgore, which has overlapping employees and operations with the FitFlop defendants) and FitFlop Limited.[6]  Brand Slam is the holding company for Soap & Glory and FitFlop Limited.[7]     Brand Slam's board of directors includes Thierry Boue (the Brand Slam Chairman / CEO and former CFO of FitFlop Limited), Marcia Kilgore (founder and Creative Director of FitFlop Limited), Jos de Raaj (Brand Slam's CFO), and Ann Mansbridge (Brand Slam's Head of Legal & Business Affairs).

16.     At all times stated herein, Defendants' agents, employees, representatives, and/or partners, were acting within the course and scope of such agency, employment, and representation, on behalf of Defendants, including but not limited to FitFlop Limited, Luxembourg Branch and Name Drop SARL.  Defendants Brand Slam Ltd., FitFlop Limited,

---

[5]     *See*          http://resources.fitflop.com/community/wp-content/themes/fitflop/pdf/GlobalRetailMarketingManager.pdf (last visited March 27, 2013).

[6]     *See* http://www.precision-point.com/wp-content/uploads/2011/07/brand-slam-case-study.pdf (last visited March 11, 2013).

[7]     *See* http://www.savills.co.uk/_news/newsitem.aspx?intSitePageId=72418&intNewsSitePageId=109706&intNewsMonth=01&intNewsYear=2010 (last visited March 11, 2013).

FitFlop USA and Ms. Kilgore worked in concert with one another and are co-participants in the acts and omissions alleged here in furtherance of their common plan and design to design, market and sell the FitFlop Footwear in the United States and the State of New Jersey. In addition to the wrongful conduct giving rise to primary liability, Defendants further aided and abetted each other and rendered substantial assistance in the wrongs complained of. Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of the misconduct, and were aware of their contribution to the wrongdoing.

## FACTUAL ALLEGATIONS

17.     In June 2007, Defendant FitFlop Ltd. began selling the FitFlop Footwear in the United States. At the same time, Defendant launched a major advertising campaign to promote FitFlop Footwear.

18.     FitFlop Limited, Brand Slam, and Marcia Kilgore produced, designed, advertised, sold and marketed FitFlop Footwear purchased by United States consumers. Even after Defendants established FitFlop USA in 2010, decision-making relating to the advertising, marketing, design and research and development for FitFlop Footwear continued to be done by FitFlop Limited, Brand Slam and Marcia Kilgore.

19.     According to testimony by Ms. Kilgore, from the launch until today she is the person most knowledgeable about FitFlop Footwear's advertising and marketing materials. Additionally, Ms. Kilgore creates the content for and personally approves every advertisement by FitFlop about FitFlop Footwear.

20.     Ms. Kilgore, a self-professed former body builder and personal trainer, founded FitFlop in 2007. In 1996, Ms. Kilgore started and was the sole owner of the highly successful New York City-based Bliss Spa before selling a majority stake in 1999 for a reported $30 million to Louis Vuitton and Moet Hennessy.[8] Ms. Kilgore sold her remaining ownership in Bliss Spa to Starwood Hotels in 2003. In 2006, Ms. Kilgore started a cosmetics company called

---

[8]     *See* http://www.entrepreneur.com/article/222602 (last visited March 6, 2013).

Soap & Glory.  Ms. Kilgore also owned a consulting company called Brandhandling, which was associated with Soap & Glory and FitFlop.

21.     FitFlop's website describes how Ms. Kilgore – "the FITFLOP boss" – launched FitFlop: "In 2005 with one booming business under her belt, one in the works [Soap & Glory], and with time with her kids taking priority over time on the treadmill, Kilgore realised that there must be thousands of women like her who were looking for the 'cliff-notes' version of toning. Two years, and several rounds of R&D later, she launched FITFLOP."[9]

22.     Defendants sell FitFlop Footwear to consumers in the United States through authorized retailers such as Macy's, Victoria's Secret, and Nordstrom.  Beginning in 2012, Defendants began selling their FitFlop Footwear directly to consumers in the United States through their ecommerce website as well.

23.     Defendants, led by Marcia Kilgore, maintain strict control over any advertising for FitFlop Footwear.  Defendants do not permit retailers to create their own advertisements for FitFlop Footwear.  Retailers are required to use Defendants' standardized marketing materials for FitFlop Footwear.

24.     Like their competitors in the so-called "toning shoes" footwear market, Defendants claim that instability created by FitFlop Footwear's patent-pending Microwobbleboard™ design (essentially three different densities of foam rubber made of a chemical called ethylene vinyl acetate ("EVA")), results in increased toning, increased muscle activity, and reduction of joint strain.

25.     The following pictures are representative of the footwear offerings from Defendants' Microwobbleboard™ product line, which are all marketed to provide the same health benefits:

---

[9]     *See* http://www.fitflop.com.au/who-we-are/marcia-kilgore/ (last visited March 6, 2013).



26.    All styles of FitFlop Footwear that Defendants design, manufacture, and/or advertise, market, and sell feature the Microwobbleboard™ technology, which Defendants describe as a three part system comprised of: (1) a high density heel that "absorbs up to 22% more shock to help relieve joint stress;" (2) a low density midsection that "creates instability, which increases leg muscle activation up to 16%;" and (3) a mid density toe cap that "helps maintain speed, pace, and variation" in walking. *See* FitFlop, http://www.fitflop.com/how-they-work/technology/scat/technology/ (as of July 10, 2011); *see also* Ex. A attached at 4, 14 (FitFlop website exemplars as of October 9, 2012, and January 17, 2013 with same message). Throughout their marketing and advertising, including on hangtags and hangers attached to FitFlop Footwear on retail shelves, Defendants use the following photographic image to illustrate the Microwobbleboard™ design:



**DEFENDANTS' DECEPTIVE ADVERTISING AND MARKETING**

27.     Defendants uniformly represent that the Microwobbleboard™ technology in all of their FitFlop Footwear allows consumers to "get a workout while you walk" because the shape and density of the soles are "biomechanically engineered" to increase the time that your leg muscles are engaged as compared with ordinary shoes.

28.     Under the "How They Work" page on Defendants' website, http://www.fitflop.com/scat/howtheywork/ (as of July 1, 2011), which is available to the general public, Defendants state:

> FitFlop Footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them.  Studies at the Centre for Human Performance at London South Bank University (LSBU) show that normal walking in FitFlop sandals can help:
>
> - help increase leg and bottom muscle activity (up to 30%) (so you feel less ache in your hips and knees),
>
> - absorb more shock than a normal shoe (up to 22%),
>
> - help realign ground force reaction closer to your joints,
>
> - reduce foot pressure.

29.     Defendants' website also links to a longer than four minute video featuring FitFlop Footwear founder Marcia Kilgore and Dr. David Cook, who are "co-inventors" of the patent-pending Microwobbleboard™ technology, discussing how FitFlop Footwear works. Defendants' website is available to the general public.  *Id., also available at* http://www.youtube.com/watch?v=q3uZlnKeCxc&feature=player_embedded.

30.     Throughout the relevant time period, Defendants have marketed all of their FitFlop Footwear using similar deceptive advertising and packaging, conveying a substantially similar message about health benefits that FitFlop Footwear purportedly provides.

31.     Defendants make the deceptive health benefits claims on hangers from which each pair of FitFlop Footwear are hung on retail shelves, such as the following:





*See also* Ex. B attached (collection of exemplar FitFlop Footwear hangers from spring 2008, spring 2009, spring 2010, spring 2011, spring 2012, and February 2013).

32.     Consistently throughout the relevant time period, Defendants also make the deceptive health benefits claims in hangtags attached to each pair of FitFlop Footwear, such as the following:



## It's the flip flop with the gym built-in.™

FitFlop sandals were developed in the UK over a two year collaboration between founder Marcia Kilgore and expert biomechmanists Dr David Cook and Darren James from the CENTRE FOR HUMAN PERFORMANCE at London South Bank University. Originally designed to help modern women squeeze a little more exercise into their increasingly hectic schedules, FitFlop footwear is built with patent-pending muscle-loading microwobbleboard™ midsole technology so you just have to put a pair on to get a workout while you walk.

**"The microwobbleboard technology increases activity in the muscles involved in walking by approximately 10% when compared to a normal pair of athletic footwear".**

Dr David Cook, Senior Lecturing Biomechanist, LSBU

## FitFlop. Get a workout while you walk.™

FitFlop sandals are biomechanically engineered to help tone and tighten your leg muscles while you walk in them. Studies at the Centre for Human Performance at LSBU show that normal walking in FitFlop sandals[1] can help:

- increase leg, calf and gluteal muscle activity
- improve your posture
- mimic the gait of barefoot walking but with more muscle load
- improve muscle tone

FitFlop sandal wearers have also reported relief from plantar fasciitis, heel spurs, chronic back pain, sciatica, osteoarthritis, RLS (restless leg syndrome), scoliosis and degenerative disc disease*.

Biomechanical efficacy and performance testing carried out between December 2006 and March 2007 at Salford University, Manchester and The Centre For Human Performance, LSBU, London, on the original Walkstar FitFlop sandal.

*Visit fitflop.com to read more firsthand wearer feedback.

## FitFlop sandals work your bum and thigh muscles more.

| Gluteus Maximus | Rectus Femoris |
| --- | --- |

● FitFlop Sandals  ○ Shoe

Independent studies with leading UK athletic biomechanists confirm: the microwobbleboard midsole boosts overall leg muscle activity, increases calf muscle efforts, and extends the activation time of certain muscles (your rectus femoris and gluteus maximus muscles) during every single step[1], so you get a workout while you walk!

15

Throughout the relevant time period, Defendants have made substantially similar representations on their hangtags.  *See also* Exhibit C attached (FitFlop Footwear hangtag exemplars from spring 2009, spring 2012, and February 2013).

33.    Also attached to the FitFlop Footwear throughout the relevant time period, and designed to add credibility to the advertising claims, are "warning signs," which state:

> WARNING:  [FitFlop Footwear] has the potential to increase muscle activity in terms of duration and workload and instigates a more active foot profile.  As such, we recommend that all FITFLOP footwear be used progressively if you: a) have any health concerns which you suspect may be aggravated by wearing them, b) experience any discomfort as a result of wearing them, and/or c) are pregnant, please consult a medical practitioner before starting or continuing to wear FITFLOP footwear.



34.    Defendants repeat the deceptive statements in their online advertisements.  The following are examples of online advertising from Defendants' website on "FitFlop benefits" and "Technology":





35.     Defendants deceptively claim on their website that FitFlop Footwear can help: (a) "realign ground force reaction closer to your joints"; (b) "increase leg and bottom muscle activity (up to 30%);" and (c) relieve ache in your hips and knees, citing a test comparing FitFlop sandals to a control shoe.  *See* above and Ex. A attached (FitFlop website exemplars from November 24, 2010, August 9, 2011, October 9, 2012, January 17, 2013, and February 21, 2013).

36.     Defendants' print advertisements contain substantially similar deceptive messages about the ability of FitFlop Footwear to provide health benefits.  The following print

advertisement from Fall 2011, is illustrative, representing that walking in FitFlop sandals results in 19% more quadricep activation, 30% longer bottom muscle activation, and 16% more hamstring activation:



*See also* Ex. D attached (exemplar FitFlop Footwear print advertisements from spring 2009, spring 2010, November 2010, and August 2010).

37.    Throughout Defendants' Internet and print advertisements, and on the product's packaging and labeling Defendants claim that these health benefits are the result of FitFlop Footwear's Microwobbleboard™ technology.

38.    All of Defendants' advertisements convey the same message that Defendants' FitFlop Footwear provides increased muscle toning over traditional footwear simply by walking in it.    For example, FitFlop advertising states: "FitFlops feature patent-pending Microwobbleboard™ technology so every step you take in your FitFlops helps tone and trim your legs."



39.   Similarly, another print advertisement claims that FitFlop Footwear can "Tone ... your leg and bottom muscles more every single time you take a step."



40.   The marketing for men's and women's FitFlop Footwear conveys substantially the same message. For example, Defendants state that each of their men's FitFlop Footwear provides the same "Benefits":

**RELIEF YOU CAN WEAR ON YOUR FEET™**

FitFlop footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them. Studies at the Centre for Human Performance at LSBU show that normal walking in FitFlop sandals* can help:

● **reduce hip joint stress (up to 8%),**

● **reduce knee joint stress (up to 20%),**

● **reduce ankle joint force (up to 11%),**

● **reduce foot pressure concentration\*.**"[10]

\*       \*       \*

\* When compared to a control shoe.  Case studies were performed on Microwobbleboard technology over a forty-eight month period by Dr. David Cook, Senior Lecturer in Biomechanics, and Darren James at the Centre for Human Performance at London South Bank University (LSBU).

41.     Defendants also state that each of their women's FitFlop Footwear provides similar **"Benefits"**:

**FITFLOP. GET A WORKOUT WHILE YOU WALK™**

FitFlop footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them.  Studies at the Centre for Human Performance at LSBU show that normal walking in FitFlop sandals\* can help:

● **help increase leg and bottom muscle activity (up to 30%),**

● **absorb more shock than a normal shoe (up to 22%),**

● **help realign ground force reaction closer to your joints (so you feel less ache in your hips and knees), reduce foot pressure**."[11]

\*       \*       \*

\* When compared to a control shoe.  Case studies were performed on Microwobbleboard technology over a forty-eight month period by Dr. David Cook, Senior Lecturer in Biomechanics, and Darren James at the Centre for Human Performance at London South Bank University (LSBU).

42.     Defendants' packaging, labeling, print and website advertisements reinforce their health benefits message by using purported doctor endorsements, including the following statement from a doctor at London South Bank University ("LSBU"):

"The FitFlop shoe is a hybrid shoe that allows a more natural form of walking giving both comfort and improved performance in the calf and hip muscle groups

---

[10]     *See* Exhibit E attached (representative collection of Defendants' "Benefits" advertising for men's FitFlop Footwear).
[11]     *See* Exhibit F attached (representative collection of Defendants' "Benefits" advertising for women's FitFlop Footwear).

in comparison to a training shoe."

- Dr. Phillip Graham-Smith

43.     Through their labeling and advertising statements concerning their FitFlop Footwear – including those referenced above – Defendants have uniformly conveyed one message: that Defendants' products provide increased muscle activation over traditional footwear, resulting in increased muscle toning and related health benefits simply by walking in them.

### DEFENDANTS' REPRSENTATIONS ARE FALSE AND DECEPTIVE

44.     Defendants claim that FitFlop Footwear's major health benefits have been shown in clinical studies.  For example, on their fitflop.com website, Defendants state: Studies at the Centre for Human Performance at London South Bank University show that normal walking in FitFlop sandals can help: (a) "increase leg and bottom muscle activity (up to 30%) (so you feel less ache in your hips and knees);" (b) "absorb more shock than a normal shoe (up to 22%);" (c) "help realign ground force reaction closer to your joints;" and (d) "reduce foot pressure and pain from heel spurs and plantar fasciitis."  *See* FitFlop, http://www.fitflop.com/scat/ howtheywork (as of July 1, 2011).  *See also* Ex. A at 6, 16, 28 (FitFlop website exemplars discussing "a study conducted by Salford University…").

45.     Defendants also state that Drs. Philip Graham-Smith and Richard Jones of Salford University independently tested the health benefits of FitFlop Footwear.  *See* FitFlop, http://www.fitflop.com/how-they-work/research/scat/researchresults/ (as of July 1, 2011).  *See also* Ex. A at 6, 16, 28 (same).

46.     None of these studies, however, test the claims made or constitutes scientific or clinical proof for the claims made, a fact the scientists admit.  The studies are also of very low quality.  Except one study, which actually demonstrates the falsity of Defendants' health benefits claims, neither the LSBU nor the Salford studies have been published in peer-review journals.  Defendants also have not made either of the studies publicly available, including on their website.  The LSBU and Salford studies, all of which are funded by FitFlop, are evidence of the

false and deceptive nature of the advertising message at issue.  For example, the studies do not test endpoints relevant to the FitFlop's toning, strengthening, and pain relieving message made throughout the advertising campaign.  Furthermore, the LSBU studies were conducted by the developers of the Microwobbleboard™ technology, LSBU's Dr. David Cook and Mr. Darren James.

47.     Contrary to Defendants' statements about the increased muscle activation effect of their FitFlop Footwear, walking in Defendants' FitFlop Footwear provides no greater amount of muscle activation or exercise response than walking in ordinary footwear.  Indeed, clinical evidence demonstrates that Defendants' claims regarding the FitFlop Footwear are false and deceptive.  Furthermore, there are no clinical benefits to the purported muscle activation and response benefits that Defendants claim in their advertising.

48.     For example, two studies funded by the American Council on Exercise by the Departments of Physical Therapy and Exercise and Sports Science of the University of Wisconsin-La Crosse compared exercise response rates and muscle activation rates from walking in three popular varieties of toning shoe (referred to in the study as "fitness shoes"), against walking in regular athletic shoes.  The American Council on Exercise publicized the results of this study on its website through a news article released in August 2010.  *See* http://www.acefitness.org/certifiednewsarticle/720/will-toning-shoes-really-give-you-a-betterbody/ (last visited March 27, 2013).

49.     One of these recent studies "found no evidence that walking in fitness shoes had any positive effect on exercise heart rate, oxygen consumption, or caloric expenditure compared to walking in a regular running shoe."  *See* Porcari Report at 11.  In fact, it found "no significant differences in muscle activation levels for any of the muscles tested between any of the shoe conditions."  *Id*. at 12.  The "muscles tested" included muscles from the buttocks (gluteus maximus), calf (gastrocnemius) and hamstring (biceps femoris) muscle groups.  *Id*. at 6.

50.     The Porcari Report concluded that "wearing so called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular

running shoe.  Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone more than wearing a regular running shoe." *Id.* at 12.

51.     As Dr. Porcari stated, "Don't buy these shoes because of the claims that you're going to tone your butt more or burn more calories.  That's absolutely wrong[.]"  American Council on Exercise, http://www.acefitness.org/getfit/studies/toningshoes072010.pdf (last visited March 27, 2013).

52.     Moreover, one published study conducted to determine the effectiveness of unstable shoe construction (rocker bottom shoes) on reducing pain and increasing balance in persons with knee osteoarthritis found that there was no significant difference between the test group that wore an unstable shoe construction and the control group in either pain reduction or increased balance.  Benno M. Nigg *et al.*, *Unstable Shoe Construction and Reduction of Pain in Osteoarthritis Patients,* Medicine & Science in Sports & Exercise (2006) (peer-reviewed clinical evidence).

53.     An even more recent published study was conducted for the sole purpose of investigating "the effect of wearing Fitflops$^{TM}$ on the muscle activity of the lower limb."  Burgess, K.E., Swinton, P.A., *Do Fitflops$^{TM}$ increase lower limb muscle activity?*, Clin. Biomech. (2012), http://dx.doi.org/10.1016/j.clinbiomech.2012.08.011.  The study, which further demonstrates that Defendants' advertising claims are false and deceptive, found that there "was no significant difference in the activity" of lower limb muscles, and based on these results, "the use of Fitflops$^{TM}$ is not recommended as a means of increasing muscle activity…during activities of daily living in a healthy recreationally active female population."

54.     A second study was recently published that tested FitFlop Footwear.  Price, C., Smith L. et al., *The effect of unstable sandals on instability in gait in healthy female subjects*, Gait & Posture (2013), http://www.ncbi.nlm.nih.gov/pubmed/23357759.   The study was conducted by three researchers from Salford University who receive substantial funding from FitFlop: Carina Price and Drs. Philip Graham-Smith and Richard Jones.  The stated purpose of the study was to "investigate the instability induced by four (FitFlop, Masai Barefoot

Technology, Reebok Easy-Tone and Skechers Tone-Ups) commercially available unstable sandals and one stable control sandal (Earth) in walking in 15 females." The authors evaluated joint kinematics, center of pressure at the foot, and EMG activity. As further evidence of the false and deceptive nature of the FitFlop Footwear advertising message, no clinically relevant outcomes were associated with wearing FitFlop Footwear. In fact, the authors conceded that "[t]he long-term influence of the footwear on gait of wearers should be investigated."

55.    To further reinforce the appearance that their claims are legitimate and that the FitFlop Footwear is different from ordinary footwear, Defendants consistently represent that their product line has "the backing of the medical profession ... from top physiotherapists to leading podiatrists." Press Release, *FitFlop Shoes – Can They Be Beaten?* (Oct. 12, 2010), http://www.openpr.com/news/147560/FitFlop-Shoes-Can-They-Be-Beaten.html (last visited July 1, 2011).

56.    This representation is deceptive. In fact, many notable physicians and podiatrists do not endorse FitFlop Footwear. For example, the president of the American Academy of Podiatric Sports Medicine stated that toning shoes pose "major risks, especially for adults. Creating instability, on adults especially is not a good thing."[12] Likewise, Lisa Callahan, a sports medicine doctor at New York's Hospital for Special Surgery, said "there's just nothing magical about a [toning] shoe like this."[13] In a Newsweek article, "Hyping Hope," Doug Gurley, an orthopedic surgeon and sports-medicine specialist at the San Juan Regional Medical Center in Farmington, N.M., says he's "highly suspicious" of the claim that destabilizing the foot has any health or fitness benefit.[14]

---

[12]    Amber Smith, *Can Easytone, Fitflops, Trim Treads or Other Shoes Tone Your Body,* Syracuse Blog (Aug. 24, 2010), http://blog.syracuse.com/cny/2010/08/can_easytone_fitflops_trimtreads_or_other_shoes_tone_your_body.html (last visited Apr. 27, 2011).
[13]    *Flops That Make You Fit? '20/20' Tries Out the FitFlop,* (ABC Television Broadcast July 9, 2008), *available at* http://www.youtube.com/watch?v=xaY_15HLmts (last visited Apr. 27, 2011).
[14]    Kendyl Salcito, *Hyping Hope*, Newsweek, July 26, 2007, *available at* http://www.newsweek.com/2007/07/25/hyping-hope.html.

57.     In furtherance of their deceptive advertising, Defendants also claim on their website and advertising materials that FitFlop Footwear has "been approved by the American Podiatric Medical Association- APMA."  However, the APMA Seal of Acceptance only means the shoes "allow for the most normal foot function and promote quality health."  The APMA does not endorse the shoes' "toning capabilities" as Defendants' website deceptively implies.

58.     Even though walking in Defendants' FitFlop Footwear offers no greater benefit in toning or muscle activation than walking in a traditional (and lower-priced) walking shoe, FitFlop Footwear has been a huge commercial success for Defendants: "FitFlop ha[s] been the top selling fitness Footwear brand since their launch a few years ago."  *See, e.g.*, Press Release, *Customers Are Getting Excited About FitFlops Spring 2011 Collection* (Nov. 12, 2010), *available at* http://express-press-release.net/79/Customers-Getting-Excited-About-FitFlops-Spring-2011-Collection-54891029.php (last visited July 1, 2011).  Indeed, the press release stated that the winter range of women's boots offered by Defendant was "literally selling out." *Id*.

59.     According to Defendants, over 18 million pairs of FitFlops have been sold since their launch in May 2007.[15]  *See also* Eamon McNiff and Ann Varney, *Flops That Make You Fit? '20/20' Tries Out the FitFlop*, ABC News, July 9, 2008, *available at* http://abcnews.go.com/ Health/story?id=5246637&page=1 (last visited July 1, 2011) (from June 2007 to July 2008, Defendants sold more than 1.5 million pairs of FitFlops in the United States).

60.     Based upon the purported significant health benefits conveyed in their marketing and advertising, Defendants are able to price FitFlop Footwear at a premium to other similar "non-toning" footwear.   In fact, the approximate $60.00 retail price of FitFlop sandals is roughly double the price of other "non-toning" flip flops sold by competitors.

---

[15]     *See* http://www.fitflop.com/community/community,en_US,pg.html?page_id=2419 (last visited March 27, 2013).

## CLASS DEFINITION AND ALLEGATIONS

61.     Pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Glaberson brings this action on behalf of herself and members of a Class defined as:

> All persons who purchased FitFlop Footwear in New Jersey until the date notice is provided to the Class.  Excluded from the Class are Defendants and their officers, directors and employees, and those who purchased FitFlop Footwear for the purpose of resale or who assert claims for personal injury.

62.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of FitFlop Footwear who have been damaged by Defendants' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by the Defendants, however, and thus potential Class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

63.     ***Existence and Predominance of Common Questions of Law and Fact***.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  Common questions of law and fact include, but are not limited to, the following:

(a)     whether Defendants had adequate substantiation for their claims prior to making them;

(b)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)     whether Defendants' alleged conduct violates the CFA;

(d)     whether the alleged conduct constitutes breach of express warranty;

(e)     whether Defendants engaged in false or misleading advertising;

(f)     whether Plaintiff and Class members have ascertainable loss or otherwise been damaged and the proper measure of that damage; and

(g)    whether Plaintiff and Class members are entitled to injunctive relief.

64.    *Typicality*.  Plaintiff Glaberson's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendants' deceptive statements, including deceptive claims that accompanied each and every pair of FitFlop Footwear sold.   Plaintiff Glaberson is advancing the same claims and legal theories on behalf of herself and all members of the Class.

65.    *Adequacy of Representation*.   Plaintiff Glaberson will fairly and adequately protect the interests of the members of the Class.   Plaintiff Glaberson has retained highly competent counsel and experienced class action attorneys to represent her interests and that of the Class.   Plaintiff Glaberson and her counsel have the necessary financial resources to adequately and vigorously litigate this class action.   Plaintiff has no adverse or antagonistic interests to those of the Class.  Plaintiff Glaberson is willing and prepared to serve the Court and the Class members in a representative capacity with all of the obligations and duties material thereto and is determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

66.    *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.   The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.   It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single

proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

67.     Unless a Class is certified, Defendants will retain monies received as a result of its conduct that were taken from Plaintiff Glaberson and Class members.  Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

### NOTICE TO ATTORNEY GENERAL OF ACTION

68.     Pursuant to N.J. Stat. Ann. §56:8-20, a copy of this Complaint has been mailed to the Attorney General at the time of the filing of the Complaint.

### COUNT I

### Violation of the New Jersey Consumer Fraud Act

69.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

70.     The Consumer Fraud Act ("CFA") was enacted and designed to protect consumers against unfair, deceptive and fraudulent business practices. N.J. Stat. Ann. §56:8-1 et. seq.

71.     N.J. Stat. Ann. §56:8-2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

72.     Plaintiff, other members of the Class, and Defendants are "persons" within the meaning of the CFA.

73.     FitFlop Footwear manufactured and sold by Defendants is "merchandise" within the meaning of the CFA, and Plaintiff and other members of the Class are "consumers" within the meaning of the CFA and thus entitled to the statutory remedies made available in the CFA.

74.     Defendants, through their advertisements, used unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation in violation of the CFA in connection with the marketing of FitFlop Footwear, as alleged above.

75.     Defendants also knowingly concealed, suppressed and consciously omitted material facts to Plaintiff and other members of the Class knowing that consumers would rely on the advertisements and packaging to purchase FitFlop Footwear, including by concealing scientific studies and data that did not support their claims.

76.     The misrepresentations and omissions were material and were intended to, and likely to, deceive a reasonable consumer.

77.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, inter alia, monies spent to purchase FitFlop Footwear, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

78.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

## COUNT II

### Breach of Express Warranty

79.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

80.     Plaintiff brings this claim individually and on behalf of the Class.

81.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased FitFlop Footwear.  The terms of that contract include the promises and affirmations of fact made by Defendants on their FitFlop Footwear packaging and product hang tags / hangers, and through the FitFlop Footwear marketing campaign, as described above.  This product packaging and advertising constitutes

express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

82.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

83.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing FitFlop Footwear that could provide the benefits described above.   Such express warranties breached by Defendants include the FitFlop Footwear representations set forth above, including in ¶¶ 26-29, 31-45, as well as in Exhibits A-E attached to this Complaint.

84.     As a result of Defendants' breach of their contract, Plaintiff and the Class have been damaged in the amount of the purchase price of the FitFlop Footwear they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members economic damages related to the price of the FitFlop Footwear purchased (and not for any damages related to physical and/or emotional injuries);

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

D.     Awarding injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E.     Ordering Defendants to engage in a corrective advertising campaign;

F.     Awarding attorneys' fees and costs;

G.      Awarding pre-judgment and post-judgment interest at the legal rate; and

H.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:   April 2, 2013                           SHEPHERD, FINKELMAN, MILLER &
                                                          SHAH, LLP
                                                 JAMES C. SHAH


                                                 By:            /s/ James C. Shah
                                                                JAMES C. SHAH

                                                 475 White Horse Pike
                                                 Collingswood, NJ 08107
                                                 Telephone: 856/858-1770
                                                 856/858-7012 (fax)
                                                 jshah@sfmslaw.com

                                                 POMERANTZ GROSSMAN HUFFORD
                                                          DAHLSTROM & GROSS LLP
                                                 JAYNE A. GOLDSTEIN
                                                 1792 Bell Tower Lane, Suite 203
                                                 Weston, FL 33326
                                                 Telephone: 954/315-3454
                                                 954/315-3455 (fax)
                                                 jagoldstein@pomlaw.com

                                                 BLOOD HURST & O'REARDON, LLP
                                                 TIMOTHY G. BLOOD
                                                 THOMAS J. O'REARDON II
                                                 701 B Street, Suite 1700
                                                 San Diego, CA  92101
                                                 Telephone: 619/338-1100
                                                 619/338-1101 (fax)
                                                 tblood@bholaw.com
                                                 toreardon@bholaw.com

                                                 MILBERG LLP
                                                 JANINE L. POLLACK
                                                 JOSHUA E. KELLER
                                                 One Pennsylvania Plaza, 49th Floor
                                                 New York, New York 10119

Telephone: 212/594-5300
212/868-1229 (fax)
jpollack@milberg.com
jkeller@milberg.com


EDGAR LAW FIRM LLC
JOHN F. EDGAR
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: 816/531-0033
816/531-3322 (fax)
jfe@edgarlawfirm.com


Attorneys for Plaintiff